UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Case No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| THE GOLDFIELD CORPORATION, DAVID | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| P. BICKS, HARVEY C. EADS, JR., JOHN P. | : **THE SECURITIES EXCHANGE ACT** |
| FAZZINI, DANFORTH E. LEITNER, and | : **OF 1934** |
| STEPHEN L. APPEL, | : |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against The Goldfield Corporation ("Goldfield" or the "Company") and the members of Goldfield's board of directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Goldfield by affiliates of First Reserve Fund XIV, L.P. ("First Reserve").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on December 1, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to the Company's stockholders. The

Solicitation Statement recommends that the Company's stockholders tender their shares in support of a proposed transaction whereby FR Utility Services Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of First Reserve, will merge with Goldfield, with Goldfield continuing as the surviving corporation and a wholly-owned subsidiary of FR Utility Services, Inc., an affiliate of First Reserve (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated November 23, 2020 (the "Merger Agreement"), each Goldfield common share issued and outstanding will be converted into the right to receive $7.00 per share in cash (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer") to acquire all of Goldfield's outstanding common stock, which will expire on December 29, 2020.

3.   Defendants have now asked Goldfield's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Goldfield's financial projections relied upon by the Company's financial advisor, Stifel, Nicolaus & Company ("Stifel"), in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Goldfield's stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the Tender Offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Goldfield's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendant Goldfield is incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Goldfield common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant David P. Bicks has served as a member of the Board since 2012.

11. Individual Defendant Harvey C. Eads, Jr. has served as a member of the Board since 1999.

12. Individual Defendant John P. Fazzini has served as a member of the Board since 1984.

13. Individual Defendant Danforth E. Leitner has served as a member of the Board and since 1985.

14. Individual Defendant Stephen L. Appel has served as a member of the Board and since 2017.

15. Defendant Goldfield is incorporated in Delaware and maintains its principal offices at 1684 W. Hibiscus Boulevard, Melbourne, Florida 32901. The Company's common stock trades on the New York Exchange under the symbol "GV."

16. The defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants" or the "Board."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.** **The Proposed Transaction**

18. Goldfield, together with its subsidiaries, provides electrical infrastructure construction services primarily to electric utilities and industrial customers in Southeast and mid-Atlantic regions of the United States and Texas. It also offers electrical contracting services, including the construction of transmission lines, distribution systems, drilled pier foundations, substations, and other electrical services. In addition, the Company is involved in the acquisition, development, management, and disposition of detached single-family homes, townhomes, and

condominiums in Brevard County, Florida. Goldfield was founded in 1906 and is based in Melbourne, Florida.

19. On November 24, 2020, the Company announced the Proposed Transaction:

> MELBOURNE, Fla. and STAMFORD, Conn., Nov. 24, 2020 (GLOBE NEWSWIRE) -- The Goldfield Corporation ("Goldfield" or the "Company") (NYSE American: GV), a leading provider of electrical transmission and distribution maintenance services for utility and industrial customers, today announced it has entered into a definitive merger agreement under which an affiliate of First Reserve has agreed to acquire all outstanding shares of Goldfield for $7.00 per share in cash, pursuant to a cash tender offer. This represents a 64% premium to Goldfield's closing stock price on November 23, 2020 and a 57% premium to the 30-day volume-weighted average price of $4.46 as of the same date. The transaction, which was unanimously approved by Goldfield's Board of Directors, implies a total enterprise value for Goldfield of approximately $194 million, including net debt, and is not subject to any financing contingency.
>
> Commenting on the agreement, Goldfield's Board of Directors stated, "We fully support this transaction and are excited about the long-term opportunities this presents for the future of Goldfield and the immediate value it provides for our shareholders. First Reserve has a highly successful track record of working with services companies that operate in the utility sector to drive sustainable growth, and we are confident they will be a great partner for our customers and employees as they move forward together."
>
> Jeff Quake, Managing Director at First Reserve, commented, "This investment highlights First Reserve's continued commitment to building leading platforms which play a crucial role in maintaining and enhancing mission-critical infrastructure. As the domestic power generation mix continues to diversify, including the transition to increasingly adopt sustainable sources of electricity such as renewables, we believe Goldfield is well positioned to participate in these long-term trends driven by increased focus on ESG, reliability and asset integrity."
>
> **Transaction Details**
>
> The transaction will be completed through a cash tender offer for all of the outstanding common shares of Goldfield for $7.00 cash per share, followed by a merger in which the remaining common shares

>of Goldfield will be converted into the right to receive the same cash price per share paid in the tender offer. Goldfield's Board of Directors will unanimously recommend that all shareholders tender their shares in the offer. The transaction is conditioned upon satisfaction of the minimum tender condition, which requires that shares representing more than 50% of Goldfield's outstanding shares be tendered, as well as other customary closing conditions, including expiration of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. The estate of Goldfield's former CEO John Sottile, which has beneficial ownership and control over approximately 8.5% of the shares outstanding, has agreed to tender those shares into the offer. The transaction is expected to close by January 2021.
>
>The merger agreement will be attached as an exhibit to the Company's report on Form 8-K to be filed with the U.S. Securities and Exchange Commission (the "SEC"), and is also available on the Company's website at ***http://www.goldfieldcorp.com***.
>
>Stifel is serving as financial advisor and K&L Gates LLP is serving as legal advisor to Goldfield. Simpson Thacher & Bartlett LLP is serving as legal advisor to First Reserve.

\* \* \*

20. It is therefore imperative that Goldfield's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

B. **The Materially Incomplete and Misleading Solicitation Statement**

21. On December 1, 2020, Goldfield filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is

necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

22. The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by Stifel, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

*Omissions and/or Material Misrepresentations Concerning Goldfield Financial Projections*

23. The Solicitation Statement fails to provide material information concerning financial projections prepared by Goldfield management and relied upon by the financial advisor in its analyses. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Goldfield management provided to the Board and the financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. For the Projections prepared by Company management for Goldfield for fiscal years 2020 through 2024, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (a) PCA EBITDA; and (b) Adj. Cash Earnings

7

Before Tax (for Bayswater), but fails to disclose: (i) the line items used to calculate the non-GAAP measures; or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

25.     When a company discloses non-GAAP financial measures in a solicitation statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

27.     Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Stifel's Financial Analyses*

28. With respect to Stifel's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the basis for applying a discount rate of 14.5% to calculate the projected unlevered free cash flow for October 2020 through fiscal year 2024; (ii) the basis for applying a range of discount rates from 12.5% to 14.5% to calculate the present values of the unlevered cash flows and terminal values; (iii) the terminal value of the Company; (iv) the basis for applying a range of perpetual growth rates of 2.5% to 3.5%; and (v) the Company's unlevered cash flows used in the analysis.

29. With respect to Stifel's *Bayswater NPV Analysis*, the Solicitation Statement fails to disclose the basis for applying a discount rate of 14.5% to calculate the projected unlevered free cash flow for October 2020 through fiscal year 2022.

30. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

31. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

33. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

34. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisors' valuation analyses and resultant fairness opinion.

35. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

36. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their

shares or seek other remedies.  In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

37. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

38. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### (Against All Defendants)

39. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

40. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

41. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

42. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

43. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

44. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

### COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Goldfield within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Goldfield, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Goldfield, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior

to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Goldfield, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

49. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

| | |
|---|---|
| Dated: December 4, 2020 | **RIGRODSKY & LONG, P.A.** |
| | By: */s/ Gina M. Serra* |
| | Seth D. Rigrodsky (#3147) |
| | Brian D. Long (#4347) |
| **OF COUNSEL:** | Gina M. Serra (#5387) |
| | 300 Delaware Avenue, Suite 210 |
| **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP** | Wilmington, DE 19801 |
| | Telephone: (302) 295-5310 |
| Gloria Kui Melwani | Facsimile: (302) 654-7530 |
| 270 Madison Avenue | Email: sdr@rl-legal.com |
| New York, NY 10016 | Email: bdl@rl-legal.com |
| Telephone: (212) 545-4600 | Email: gms@rl-legal.com |
| Facsimile: (212) 686-0114 | |
| Email: melwani@whafh.com | *Attorneys for Plaintiff* |